**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **8:08CR7** |
| **Plaintiff,** | ) | |
| **vs.** | ) | **REPORT AND RECOMMENDATION** |
| **TAFT BURTTON and TERRI BURTTON,** | ) | |
| **Defendants.** | ) | |

This matter is before the court on the motions to suppress filed by defendants Taft Burtton and Terri Burtton. **See** Filing Nos. 30 and 32 - Taft Burtton's Motion and Amended Motion to Suppress and Filing No. 25 - Terri Burtton's Motion to Suppress.[1] Taft Burtton and Terri Burtton are charged in the Indictment with the knowing and intentional possession with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of a cocaine base (crack cocaine) on or about December 2, 2007 (Count I), in violation of 21 U.S.C. § 846; and a criminal forfeiture (Count II) pursuant to 21 U.S.C. § 853 regarding currency seized from Taft Burtton during the traffic stop. **See** Filing No. 1 - Indictment.

On April 29, 2008, the court held an evidentiary hearing on the motions. Taft Burtton and Terri Burtton were present along with their respective counsel, Beau G. Finley and J. William Gallup. Assistant United States Attorney Robert C. Sigler represented the United States. During the hearing, the court heard the testimony of Omaha Police Department Officers James Maloney (Officer Maloney) and Joseph Baudler (Officer Baudler), and defendants Taft Burtton and Terri Burtton. The court also received into evidence a rights advisory form (Exhibit 1); two permission to search forms (Exhibits 2 and

[1]As a convenience, this document contains certain cross-document hyperlinks to documents previously filed in this case. This document also contains links to the Nebraska local rules and legal citation from the federal reporters. The hyperlinked documents appear in blue unlined text. Except with regard to the local rules, access to the hyperlinked material is subject to fees pursuant to user agreements. The hyperlinks may be accessed without PACER fees by use of the public computer terminal in the Clerk's office.

4); and an affidavit and application for issuance of a search warrant (Exhibit 3). A transcript (TR) of the hearing was filed May 7, 2008. Filing No. 43- Transcript.

**FINDINGS OF FACT**

Officer Maloney has been a police officer with the City of Omaha for about five-and-a-half years (TR. 12). At all relevant times, Officer Maloney was assigned to the uniform patrol bureau of the northeast precinct (TR. 12). At approximately 5:30 p.m. on the evening of December 2, 2007, Officers Maloney and Taylon Fancher (Officer Fancher) were in uniform, in a marked cruiser, on routine patrol in the northeast precinct of Omaha (TR. 12-13). While heading westbound on Lake Street, Officers Maloney and Fancher observed a northbound silver Lincoln Navigator SUV run a stop sign and fail to signal its intent to turn westbound (TR. 13, 16). The officers initiated a stop of the Lincoln Navigator by activating the cruiser's emergency lights around 41st and Lake streets, facing west (TR. 14). The officers had no trouble getting the Lincoln Navigator to stop. (TR. 14). The officers had no prior knowledge concerning the occupants (TR. 60).

Officer Maloney approached the driver side and Officer Fancher approached the passenger side (TR. 14). The Lincoln Navigator contained three occupants, a driver and two back-seat passengers (TR. 15). The occupants had removed the middle seat and the rear passengers were in the far back seat, creating a "kind of a limousine setup" (TR. 15). Taft Burtton was the passenger in the rear seat of the car behind the driver's seat (TR. 16). The other rear-seat occupant was later identified as Ralph Cotton (Cotton), but he initially provided a false name and date of birth (TR. 18-19). The driver was identified as Terrence Partee (Partee) (TR 42).

When Officer Maloney approached the vehicle he observed the two back seat passengers holding 12 ounce plastic cups and there was a TGI Friday's liquor bottle on the floor (TR. 15). Officer Maloney also detected a very strong odor of marijuana coming from the vehicle (TR. 16). Officer Maloney spoke to the driver, Partee, who admitted he had a suspended driver's license (TR. 16).

Due to the number of people in the vehicle, window tints, and darkness approaching, the officers had the occupants get out of the car and secured them with hand

cuffs (TR 16-17). Officer Maloney asked what the passengers were drinking and the two passengers pointed to the TGI Friday's bottle laying in the backseat (TR. 17-18). Officer Maloney smelled the cups and detected what smelled like an alcoholic beverage (TR. 44). Partee and Cotton had outstanding misdemeanor warrants out for their arrest (Ex. 3 - Affidavit and Application). All occupants from the Lincoln Navigator were arrested.

After the three occupants were handcuffed, Officer Maloney conducted a search of Taft Burtton's person (TR. 19). This search took place before the officers searched the vehicle (TR. 19). Taft Burtton had a baggie of marijuana, approximately 15 grams, tucked in his sock, and he had approximately $4,500 in cash on him (TR. 19-20). Based on his experience, Officer Maloney thought this was a large amount of cash to be carrying (TR. 20). However, Officer Maloney did not seize the cash immediately (TR. 20). Officers seized the cash after the search of Taft Burtton's home resulted in the discovery of narcotics (TR. 52).

After the search of his person, officers placed Taft Burtton in Officer Maloney's police cruiser and searched the Lincoln Navigator (TR. 20, 46). In the Lincoln Navigator, officers discovered four baggies with marijuana or marijuana residue, including one baggie next to the driver's seat, smaller than the one found on Taft Burtton, but marijuana of the same consistency (TR. 21-22, 45-46, 63; Ex. 3 - Affidavit and Application). The sum of the weight of marijuana contained in the four bags was less than an ounce total (Ex. 3 - Affidavit and Application). The officers also found a recently smoked marijuana blunt, or roach, in the ash tray of the Lincoln Navigator (TR. 21-22, 45-46, 61). Therefore, the amount of marijuana found based on the search of Taft Burtton and in the vehicle appeared to be about an ounce (TR. 30).

During the search and after Taft Burtton was placed in the cruiser, Taft Burtton beckoned to Officer Maloney and stated to Officer Maloney the $4,500 dollars was for a real estate deal in south Omaha (TR. 20). Taft Burtton said "I know what you're thinking" (TR. 20). "You think because I got a lot of money, there's marijuana in the car, that I might be a drug dealer or something" (TR. 20). When asked why he did not use a bank or a cashier's check, something with a receipt, Taft Burtton replied using cash was "easier" (TR. 21). Officer Maloney found this explanation suspicions, but did not ask additional

questions related to Taft Burtton's statements (TR. 47). Officer Maloney had no evidence to support or contradict Taft Burtton's explanation for carrying the cash (TR. 64).

In the middle of the traffic stop at 41st and Lake, Officer Maloney contacted Officer Baudler by cellular telephone (TR. 33-34). Officer Baudler has been an OPD officer for approximately 19 years (TR. 73). Officer Maloney gave Officer Baudler a summation of what had occurred and asked if Officer Baudler would speak to the occupant of the house at 3050 Newport Avenue, determine who the occupants were, and seek a consent to search (TR. 34). Officer Maloney told Officer Baudler he had venue items to Terri Burtton or Taft Burtton that linked them to 3050 Newport Avenue, although Taft Burtton had given Officer Maloney a different address (TR. 34, 74-75). Officer Baudler agreed to make contact with the occupant (TR. 34).

Officer Maloney determined the Lincoln Navigator was registered to Taft Burtton, but no address was associated with the license plates (TR. 50). At the scene, Taft Burtton told officer Maloney he was living at 304 North 38th Street in addition to sometimes staying with his wife because they were estranged (TR. 27, 59; Ex. 3).[2] Officer Maloney checked with the Northeast dispatcher and was told 304 North 38th Street, Omaha, Nebraska was not a valid address (TR. 27-29). Based on the information from the dispatcher Officer Maloney believed the address was not valid when he drafted the affidavit (TR. 30). However, Officer Maloney learned later that the address was valid (TR 29). Officer Maloney learned from Taft Burtton that Taft Burtton's wife, Terri Burtton, lived at 3050 Newport Avenue (TR. 106, 112).

Based on his experience and observations at the traffic stop, Officer Maloney suspected the bag of marijuana found in the Lincoln Navigator may have come from the bag found on Taft Burtton, and could have been sold to the others by Taft Burtton (TR. 63). Based on this belief, Officer Maloney arrested Taft Burtton for possession with suspicion to deliver marijuana (TR 51). Officer Maloney transported Taft Burtton to the police station

---

[2]In contrast, Taft Burtton recalls he stated, "Prior to me moving to 3050 Newport, I lived at 304 North 38th Street" (TR. 106). Taft Burtton testified he did not tell Officer Maloney he was currently living at 304 North 38th Street and Officer Maloney got that address from the license plate (TR. 103). Additionally, Taft Burtton stated he and his wife do not fight (TR. 106). The discrepancy in the testimony does create a material difference. However, the court credits Officer Maloney's testimony over that of Taft Burtton after observing the witnesses and considering their testimony in light of all the other credible evidence.

at approximately 6:30 to 6:45 p.m. (TR. 32-33, 57). At 7:05 p.m., Officer Maloney advised Taft Burtton of the ***Miranda*** warnings at Omaha Police Department Central (TR. 23). Taft Burtton responded "yes sir" to each question and the answers were recorded by Officer Maloney with the use of a rights advisory form (TR. 24; Ex. 1). After the rights advisory, Taft Burtton told Officer Maloney, "the only thing you're going to find at [3050 Newport Avenue] is marijuana residue," and then invoked his right to silence (TR. 35).[3] During interviews with Partee and Cotton, separately, they mentioned they had been at 3050 Newport Avenue earlier that day smoking marijuana and playing video games with Taft Burtton (TR. 35).

Meanwhile, around 6:15 p.m. Officer Baudler and another officer, Nicholas Muller, arrived at the residence at 3050 Newport Avenue (TR. 75). The house was a red brick, single family dwelling (TR. 75). The uniformed officers knocked on the door and met a woman who identified herself as Terri Burtton (TR. 75, 86). The officers asked if they could speak to her and Terri Burtton allowed the officers to enter through the north entrance into the kitchen area where the officers explained how Taft Burtton had been arrested (TR. 76, 86). Terri Burtton testified she did not invite the officers in, but she did think she had the right to tell them they could not enter the residence (TR. 114). Officer Baudler told Terri Burtton her husband had been arrested in regard to possession of narcotics (TR. 77). Officer Baudler then asked Terri Burtton to consent to a search of the home for narcotics (TR. 76-77). Terri Burtton wanted to talk to her husband before she would consent to a search of the residence (TR. 76, 77).

On two separate occasions Terri Burtton contacted her husband at the police station where they discussed the consent to search (TR. 77-78). At one point after talking to each other, both Taft Burtton and Terri Burtton signed a permission to search form (TR. 36; Exs. 2, 4). However, almost immediately after signing the consent to search form Taft Burtton revoked his consent (TR. 26). Officer Maloney contacted Officer Baudler and told him Taft Burtton revoked his consent to search (TR. 37, 80). Learning her husband had revoked

---

[3] Taft Burtton denied he made any statements about marijuana residue to Officer Maloney or that any residue would be found at 3050 Newport Avenue (TR. 103). Again, the court credits Officer Maloney's testimony.

consent, Terri Burtton revoked her consent, as well (TR. 80-81). Terri Burtton testified she asked the officers to leave the residence, but they refused (TR. 114).

Around 7:30 p.m. Officer Maloney began to draft an affidavit and application seeking a search warrant (TR. 40, 53). Officer Maloney asked Officer Baudler to secure the house while waiting for issuance of a warrant (TR. 81, 54). Based on his experience, Officer Baudler was concerned that evidence of narcotics, if in the residence, could be easily destroyed absent a police presence (TR. 91-93). Officer Baudler went through the house to make sure no other adults were present and no one was hiding, then continued to wait for the search warrant in the kitchen area with Terri Burtton (TR. 81). Officer Baudler informed Terri Burtton the officers would be waiting at her house until the warrant arrived (TR. 98). While everyone waited, Terri Burtton cleaned the house and washed dishes (TR. 81). While in the house, Terri Burtton remained in Officer Baudler's sight (TR 95).

Later, Terri Burtton received a telephone call and, during the call, asked Officer Baudler if she was under arrest (TR. 81-82). Officer Baudler replied "no" (TR. 82). Terri Burtton stated she wanted to leave the residence, the officers did not object, and Terri Burtton left for about 20 minutes (TR. 82). When Officer Baudler informed Officer Maloney that Terri Burtton left, Officer Maloney stated he was on his way to get the warrant signed (TR 83).

Officer Maloney wrote up an affidavit to accompany the application for the search warrant. Officer Maloney sought the warrant to search the residence based on his belief the officers would discover:

> Marijuana and it's derivatives, whether homemade or manufactured; scales and packaging materials commonly used in the distribution of illicit drugs; Monies and proceeds associated with the sales of illicit drugs; Records used to conduct illegal narcotics operation and venue items identifying the occupants of 3050 Newport Avenue, Omaha, Douglas County, Nebraska.

Ex. 3 - Affidavit and Application.

In support of the search, the affidavit states, in relevant part:

> On SUN 02DEC07 1733 hours Affiant Officers MALONEY #1701 and Officer FANCHER #1839 conducted a traffic stop near 41st and Lake Street for stop sign violation on a silver

1999 Lincoln Navigator (PVC359/NE). Upon approach Affiant Officers MALONEY and Officer FANCHER detected the strong odor of marijuana coming from the vehicle, observed an open container of alcoholic beverage in plain view and the driver, Terrence PARTEE (6-30-73), had a suspended license and outstanding misdemeanor warrant. Passenger, Ralph COTTON, had an outstanding misdemeanor warrant. A search of the vehicle incident to the arrest resulted in four different bags of marijuana less than 1 ounce and one marijuana "blunt" being recovered in addition to the open container of alcoholic beverage.

The owner and additional passenger of the vehicle, Taft BURTTON, was in possession of marijuana less than an 1oz [sic] (estimated at ½ ounce by BURTTON) as well as over $4500 in US currency. BURTTON claimed he was going to use the cash to buy a building in south Omaha for his business. Affiant Officer MALONEY considered this a suspicious reason for having over $4500 in cash in the pocket of BURTTON. When Affiant Officer MALONEY asked BURTTON why he wouldn't use a check or credit on order to prove and record the transaction, BURTTON would only reply that it was "easier". BURTTON made a post Miranda statement that Affiant Officers would find marijuana residue if they searched the residence at 3050 Newport Avenue. Both passengers Terrance PARTEE (DOB: 6-30-73) and Ralph COTTON (5-28-76) stated they were at 3050 Newport Avenue earlier today smoking marijuana and playing video games.

BURTTON told Affiant Officer MALONEY and Officer FANCHER that he lived at an apartment at 304 North 38th Street in Omaha, NE in addition to staying sometime with his wife at 3050 Newport Avenue, because they were currently estranged. Affiant Officer MALONEY checked with Northeast dispatcher and learned that 304 North 38th Street in Omaha, NE was not a valid address.

Officer BAUDLER #1203 went to 3050 Newport Avenue in an attempt to gain consent to search. Consent was refused and the residence was secured pending the outcome of this application for search warrant.

Ex. 3 - Affidavit and Application.

The warrant was signed between 8:30 and 8:45 p.m. (TR. 56). At 9:00 p.m. Officer Maloney arrived at the residence with the signed search warrant (TR. 38-39). Officer Baudler and other officers began the search of the residence after Officer Baudler spoke to Officer Maloney on the telephone and Officer Maloney stated "I'm pulling up now, and I got the warrant signed" (TR. 41, 83). Terri Burtton returned, entered the house, questioned Officer Baudler's search, and said "you guys are searching my house without a warrant" (TR. 83, 116). Officer Baudler said the warrant was outside with Officer Maloney (TR. 84, 121). Terri Burtton left the residence stating, "No, I'm telling my lawyer you're searching my house without a warrant" (TR. 84). When Terri Burtton went back outside, Officer Maloney had arrived, gave her the search warrant, then she left (TR. 40, 121).[4] At the time Terri Burtton received a copy of the warrant, the officers had not yet found any items of an evidentiary nature (TR. 84). No officer searched the house for contraband prior to Officer Maloney telling Officer Baudler the judge signed the search warrant (TR. 84). Officers Maloney and Baudler then searched the residence and found contraband, including narcotics, and other items of an evidentiary nature (TR. 41, 84; Ex. 3) . Officer Maloney arrested Terri Burtton approximately one week later (TR. 84, 122).

## LEGAL ANALYSIS

### A. Traffic Stop

Taft Burtton asserts law enforcement officers had insufficient probable cause to effectuate a stop of the Lincoln Navigator. However, while on routine patrol, Officers Maloney and Fancher observed Taft Burtton's Lincoln Navigator run a stop sign and make a turn without signaling intent. The court credits the testimony of Officer Maloney regarding the violations. Such activity constituted two separate traffic violations. **See** Neb. Rev. Stat § 60-6,148 and Neb. Rev. Stat. § 60-6,161. "[A] police officer who personally observes a traffic violation has probable cause to stop the vehicle." ***United States v. $404,905.00 in U.S. Currency***, 182 F.3d 643, 646 (8th Cir. 1999) (**citing *Pennsylvania v. Mimms,*** 434

---

[4]Terri Burtton testified the officers had begun searching five to ten minutes prior to the arrival of Officer Maloney based on her observation that items in the kitchen had been moved (TR. 116-117). The court credits Officer Baudler's testimony that the only search of the residence prior to the arrival of the search warrant was a protective sweep of the house to determine if other parties were present.

U.S. 106, 109 (1977)). Accordingly, the officers had probable cause on December 2, 2007, to conduct a traffic stop of the Lincoln Navigator.

Taft Burtton contends the officers lacked probable cause, or other legal justification, for his detention or arrest, or the search of his person or the Lincoln Navigator.

Contemporaneous with a valid traffic stop, a police officer may detain the motorist while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. ***United States v. $404,905.00***, 182 F.3d 643, 647 (8th Cir. 1999). When an officer makes a routine traffic stop, "the officer [is] entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." ***United States v. McCoy***, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam). "If the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry to satisfy those suspicions." ***United States v. Ward***, 484 F.3d 1059, 1061 (8th Cir. 2007) (**quoting** ***United States v. Johnson***, 58 F.3d 356, 357 (8th Cir. 1995)). This reasonable investigation includes a request by the officer that the driver sit in the patrol car. ***United States v. Brown***, 345 F.3d 574, 578 (8th Cir. 2003). Additionally, "[s]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of the [Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." ***Delaware v. Prouse***, 440 U.S. 648, 653 (1979). "An investigative stop of a vehicle does not violate the Fourth Amendment where the police have a reasonable suspicion that the occupant of the vehicle is engaged in criminal activity." ***United States v. Briley***, 319 F.3d 360, 364 (8th Cir. 2003).

The officers immediately became suspicious the occupants of the Lincoln Navigator were engaged in criminal activity upon making contact with them. The officers immediately learned the driver was driving without a valid operator's license, the passengers were drinking alcohol from plastics cups, and a strong odor of marijuana was emanating from the vehicle. At this point, the officers were legally justified in placing the occupants of the Lincoln Navigator under arrest and searching the vehicle pursuant to the lawful arrest (TR. 65, 70). **See** ***United States v. Pratt***, 355 F.3d 1119, 1121-22 (8th Cir. 2004) (**citing** ***United States v. Robinson***, 414 U.S. 218, 234, 236 (1973)). In addition, two of the

occupants had warrants out for arrest and one occupant had given suspicious identity information, which was later confirmed to be false information.

In any event, Officer Maloney's initial observations were sufficient to expand the scope of the investigation beyond the initial traffic violations. Officer Maloney was aware at that time of particularized, objective facts which taken together with rational inferences drawn from those facts, would create a reasonable suspicion the occupants of the Lincoln Navigator were involved in criminal activity. Officer Maloney could have rationally inferred a reasonable suspicion Taft Burtton and the others were involved in criminal activity. For these reasons, Officer Maloney had a reasonable suspicion Taft Burtton was involved in criminal activity, and Officer Maloney did not violate Taft Burtton's Fourth Amendment rights when he detained Taft Burtton for the purposes of conducting an investigation related to a reasonable suspicion Taft Burtton was involved in criminal activity. Furthermore, the scent of marijuana alone provided the officers with probable cause to search Taft Burtton and the vehicle. **See** ***United States v. Clayborn***, 339 F.3d 700, 702 (8th Cir. 2003) (holding that the smell of marijuana gave the police probable cause to search); ***United States v. Peltier***, 217 F.3d 608, 610 (8th Cir. 2000) (same). Finally, an arrest is constitutionally reasonable "when an officer has probable cause to believe a person committed even a minor crime in his presence." **See** ***Virginia v. Moore***, 128 S. Ct. 1598, 1604 (2008). The discovery of the open container of alcohol, marijuana, cash and other paraphernalia found on Taft Burtton and in his vehicle justified Taft Burtton's arrest. Although, Taft Burtton argues his detention and/or arrest were unconstitutionally lengthy, the totality of the circumstances support both the length of the brief detention before arrest and continued detention after arrest. Accordingly, Taft Burtton's search, detention and arrest are supported by sufficient legal justification, as is the search of the Lincoln Navigator.

### B. Request for a *Franks* Hearing

In ***Franks v. Delaware***, 438 U.S. 154 (1978), the Supreme Court defined a limited exception to the presumptive validity of an affidavit supporting a search warrant or wire interception order. The Court held that, if the government intentionally includes material

false statements in the application or affidavit or includes material false statements with a reckless disregard for the truth that is the legal equivalent of intentional falsehood, a court reviewing a motion to suppress must "set aside those statements and then review the remaining portions of the affidavits to see if what remains [is] sufficient to establish probable cause." ***United States v. Garcia***, 785 F.2d 214, 222 (8th Cir. 1986). As stated by the Eighth Circuit in ***United States v. Falls***, 34 F.3d 674 (8th Cir. 1994):

> The defendant may challenge a facially sufficient affidavit by showing that the facts included in the affidavit are false or were made in reckless disregard of the truth, or that facts were omitted with the intent to mislead or in reckless disregard of whether it was misleading. The reviewing court must then determine whether, either absent the false material or supplemented with the omitted material, the remaining contents of the affidavit are sufficient to establish probable cause. If the remaining contents are insufficient to establish probable cause, the warrant must be voided and the fruits of the search suppressed.

***Id.*** at 681 (internal citations omitted).

To succeed in a ***Franks***-type challenge to the validity of a search warrant, a defendant bears the burden to establish by a preponderance of the evidence that the affiant, either knowingly and intentionally, or with reckless disregard of the truth, included a false statement within the warrant affidavit. ***Franks***, 438 U.S. at 155-56; ***United States v. Williams***, 981 F.2d 1003, 1005 (8th Cir. 1992). The same analysis applies to omissions of fact. The defendant must show the facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading. ***United States v. Humphreys***, 982 F.2d 254, 258 n.2 (8th Cir. 1992); ***United States v. Reivich***, 793 F.2d 957, 960-61 (8th Cir. 1986); ***United States v. Lueth***, 807 F.2d 719, 726 (8th Cir. 1986). The reviewing court must then determine whether, either absent the false material or supplemented with the omitted material, the affidavit's remaining contents are sufficient to establish probable cause. **See** ***Franks***, 438 U.S. at 156.

In order to be entitled to a ***Franks*** hearing, the Eighth Circuit has held the defendant must satisfy two requirements:

> First, the defendant must make a substantial preliminary showing of an intentional or reckless falsehood in the affidavit. The substantiality requirement is not lightly met. Allegations of negligence or innocent mistake are insufficient. Second, the allegedly false statements must be necessary to the finding of probable cause.

***United States v. Schenk***, 983 F.2d 876, 879 (8th Cir. 1993) (internal citations omitted). If these requirements are not met, no ***Franks*** hearing is required. ***United States v. Williams***, 477 F.3d 554 (8th Cir. 2007).

With the above principles in mind, the court has reviewed Taft Burtton's request for a ***Franks*** hearing. Both Taft Burtton and Terri Burtton challenge statements in the search warrant affidavit in the following aspects:

1. The affidavit contains information Taft Burtton gave an invalid address to officers, but such address was not given by Taft Burtton and the address is his valid prior address; and

2. the affidavit states "made a post Miranda statement that Affiant Officers would find marijuana residue if they searched the residence at 3050 Newport Avenue," which Taft Burtton denies saying.

Even if one assumes, *arguendo*, the information complained of is false or misleading, there is no evidence presented by the defendants to show the officers knew about the inaccuracy or intentionally or recklessly omitted information from the affidavit for the search warrant, as to item one above. The defendants did live at the 38th Street address for a time, and the officer reasonably relied upon a dispatcher in attempting to determine the validity of the address.

As to Taft Burtton's statement about residue, the court gives no credit to Taft Burtton's current self-serving denial about the earlier ***Mirandized*** statement. Moreover, regardless of whether Taft Burtton stated marijuana residue would be found at the Newport Avenue address, the other occupants of the Lincoln Navigator admitted to smoking marijuana at the residence earlier the same day. The defendants fail to provide any evidence Officer Maloney made intentional or reckless falsehood. The facts as alleged by the defendants, at most, indicate the officer made two minor mistakes. Furthermore, the information complained of does not provide the only evidence supporting the search.

Rather, the issue is whether the affidavit, as a whole, contained information supplying probable cause for the search. Even if the affidavit were inaccurate as argued by the defendants, and the complained of information were redacted, it contains substantial evidence of probable cause to believe the residence listed would contain evidence of the use and sales of illegal drugs from residence. Accordingly, the defendants' ***Franks*** challenge must be denied.

**C. Search Warrant**

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, ***Search and Seizure***, § 3.7(d) at 412 (4th ed. 2004). As the Supreme Court stated in ***Illinois v. Gates***, 462 U.S. 213, 238 (1983): "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***Id.*** Thus, when viewing a search warrant, the court must look at the totality of the circumstances set forth in the affidavit. **See** ***id.***; ***United States v. Hansel***, 524 F.3d 841, 845 (8th Cir. 2008). "The duty of the judge issuing a search warrant is to make a 'practical, common-sense decision' whether, considering all the circumstances, a reasonable person could have reason to suspect that evidence would be discovered. . . . Probable cause is a fair probability that contraband evidence of a crime will be found in the location to be searched." ***United States v. LaMorie***, 100 F.3d 547, 552 (8th Cir. 1996); **see** ***Gates***, 462 U.S. at 238. The Eighth Circuit has explained the issuing magistrate's obligation as follows:

> The task of the issuing magistrate is to make "a practical, **common-sense decision** whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that

> probable cause existed." ***Id.*** When the magistrate relied solely on the affidavit presented to him, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." ***United States v. Leichtling***, 684 F.2d 553, 555 (8th Cir. 1982), **cert. denied**, 459 U.S. 1201 (1983). **Affidavits must be read in "a common-sense and realistic fashion," *United States v. Cadwell***, 864 F.2d 71, 74 (8th Cir. 1988), **citing *United States v. Ventresca***, 380 U.S. 102, 108 (1965). "Deference is accorded an issuing magistrate's probable cause determination . . ." ***United States v. Brown***, 584 F.2d 252, 256 (8th Cir. 1978), **cert. denied**, 440 U.S. 910 (1979).

***United States v. Gladney***, 48 F.3d 309, 312 (8th Cir. 1995) (emphasis added); **see also *United States v. Spinosa***, 982 F.2d 620 (1st Cir. 1992) ("The affidavit must be 'viewed in its entirety,' and 'must be given a common-sense and realistic, rather than a hyper technical interpretation.'").

"Probable cause must exist at the time of the issuance of the warrant, not merely at some earlier time." ***LaMorie***, 100 F.3d at 554. However, since there is no bright-line test for determining whether the information in an affidavit is stale, the statements in an affidavit must be judged by the particular circumstances of the case. "[T]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." ***United States v. Koelling***, 992 F.2d 817, 822 (8th Cir. 1993). Where continuing criminal activity is suspected, the passage of time is less important. ***United States v. Ozar***, 50 F.3d 1440, 1446 (8th Cir. 1995).

The defendant argues the same issues supporting his request for a ***Franks*** hearing detract from the sufficiency of the affidavit in terms of probable cause. As stated above, there is ample probable cause absent the disputed statements. The affidavit contains information from at least two of the occupants of the Lincoln Navigator that they had all been smoking marijuana at the Newport Avenue residence earlier the same day. These statements alone provide the officers' with a fair probability that contraband or evidence of a crime would be found at the residence. Additionally, the officers found multiple baggies either containing marijuana or marijuana residue on Taft Burtton and in his vehicle,

the Lincoln Navigator. One of the smaller baggies of marijuana appeared to be of the same consistency as the larger baggie concealed by Taft Burtton. The amount of cash combined with an illogical explanation for its existence is "strong evidence that the cash is connected with drug activity." **See *United States v. $84,615.00 in U.S. Currency***, 379 F.3d 496, 501 (8th Cir. 2004). Moreover, the amount of cash, combined with the proximity of the cash to marijuana, several baggies, and the statements from the passengers further justifies Officer Maloney's suspicions that evidence reflecting distribution of illicit drugs would be found at the residence. Under the totality of the circumstances, the search warrant contains sufficient probable cause to support its issuance.

**D. *Leon* Good Faith Exception**

Even assuming *arguendo*, that probable cause was lacking in sufficiency or freshness, the ***Leon*** good faith exception would allow the admissibility of the evidence seized. **See *United States v. Leon***, 468 U.S. 897 (1984). In ***Leon***, the Supreme Court held "evidence obtained pursuant to a search warrant should not be excluded where the officers executed the warrant 'with an objectively reasonable reliance on the magistrate's determination of probable cause.'" ***LaMorie***, 100 F.3d at 555. There are four exceptions to this good faith rule:

> (1) where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing officer "wholly abandoned his judicial role;" (3) where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4) where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid.

***Id.*** (internal citations omitted).

None of those exceptions were present in this case. Accordingly, the officers could rely upon the search warrant as to the residence and Taft Burtton and Terri Burtton's motion to suppress the results of the execution of the search warrant should be denied.

**E. Execution of Warrant**

The defendants argue the search of 3050 Newport Avenue was performed prior to obtaining a search warrant after an illegal entry. The Fourth Amendment prohibits "unreasonable searches and seizures" and assures "the right of the people to be secure in their persons, houses, papers, and effects." "[T]he 'touchstone of the Fourth Amendment is reasonableness.' Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." ***Ohio v. Robinette***, 519 U.S. 33, 39 (1996) (**citing** ***Florida v. Jimeno***, 500 U.S. 248, 250 (1991)). "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." ***Payton v. New York***, 445 U.S. 573, 589-90 (1980) (citations omitted); ***see also*** ***United States v. Castellanos***, 518 F.3d 965, 969 (8th Cir. 2008). "It is a well-established constitutional principle that law enforcement officers may not enter a person's home without a warrant unless the entry is justified by exigent circumstances or the consent of the occupant." ***United States v. Conner***, 127 F.3d 663, 666 (8th Cir. 1997) (**citing** ***Steagald v. United States***, 451 U.S. 204, 211 (1981)). The court reviews a Fourth Amendment challenge to the warrantless entry of a home for reasonableness. ***Castellanos***, 518 F.3d at 969. The evidence before the court establishes Terri Burtton consented to the officers' entry into the residence. The officers presented themselves at her door and she led them into the kitchen where they remained for some time. Terri Burtton admits she knew she was not required to allow the officers to enter and she did not ask them to leave until the warrant had already been secured. Accordingly, the period of time from the officers' entry initial into the residence to the execution of the search warrant was based on a consensual encounter. The officers acted reasonably by relying on Terri Burtton's conduct in allowing them to enter and remain at the residence until the warrant arrived.

The issue of whether the search warrant was on the premises when the search began is irrelevant. "While it may be foolhardy to proceed in the absence of the physical presence of the warrant, it is not unconstitutional. Nothing in the fourth amendment or Rule 41 requires the search warrant be physically present prior to commencing the search."

***United States v. Hepperle***, 810 F.2d 836, 839 (8th Cir. 1987). The warrant was signed by the issuing judge before any items of an evidentiary nature were discover by the officers. The possible physical absence of the warrant did not render the search invalid.

**F. Statements**

It does not appear Terri Burtton made any incriminating statements to officers, which were associated with the search of the residence. Further Taft Burtton does not challenge the admissibility of any of his statements. However, Taft Burtton does deny making the statements with regard to his previous address and about marijuana residue. The court will evaluate the admissibility of the statements on their own merit and under ***Wong Sun v. United States***, 371 U.S. 471 (1963). As an initial matter, the court has already found the defendants were not subject to an illegal stop or search, therefore statements or other evidence asserted to be suppressed as the fruit of an illegal stop or search should not be suppressed under ***Wong Sun***.

The touchstone for the admissibility of a defendant's statements is voluntariness. ***Brown v. Mississippi***, 297 U.S. 278, 279 (1936). The court must look to the totality of circumstances in determining whether or not the statements were voluntary. ***Mincey v. Arizona***, 437 U.S. 385, 401 (1978); ***Colorado v. Connelly***, 479 U.S. 157 (1986); ***Schneckloth v. Bustamonte***, 412 U.S. 218 (1973). In this case, Taft Burtton was advised of his constitutional rights pursuant to ***Miranda v. Arizona***, 384 U.S. 436 (1966). Even though Taft Burtton was advised of his ***Miranda*** rights, the court must examine the conduct of the law enforcement officials to determine whether or not there was an overreaching by law enforcement officials amounting to coercive police activity. Coercive police conduct will render a confession inadmissible. ***Blackburn v. Alabama***, 361 U.S. 199 (1960). In determining whether a defendant made statements voluntarily, the court must determine if the accused was coerced or his will was overborne and his capacity for self-determination critically impaired. ***United States v. Santos-Garcia***, 313 F.3d 1073, 1079 (8th Cir. 2002). There is no evidence Taft Burtton did not understand the advice of rights. There is evidence he was alert and coherent and decided to invoke his right to silence and counsel. Taft Burtton did make statements about the presence of the cash,

his prior residence, and marijuana residue at his residence. Such statements were voluntarily made either after the rights advisory or the statements were not the product of a custodial interrogations. **See *Butzin v. Wood***, 886 F.2d 1016, 1018 (8th Cir. 1989) ("***Miranda*** does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers."). Accordingly, the defendants' motions to suppress should be denied in all respects.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

1. Taft Burtton's Motion (Filing No. 30) and Amended Motion to Suppress (Filing No. 32) be denied; and

2. Terri Burtton's Motion to Suppress (Filing No. 25) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 11th day of June, 2008.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge